# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| JADEN THOMAS, RYAN BRAVERMAN, KATIE DEDELOW, JAKE RAMSEY, ISABELLA BLACKFORD, MICHAEL DUKE, LINDSAY FREEMAN individuals, each on behalf of himself/herself and all others similarly situated, <br><br>Plaintiffs, <br><br>v. <br><br>THE TRUSTEES OF INDIANA UNIVERSITY, <br><br>Defendant. | Case No. 1:18-cv-03305-TWP-DML |

## ORDER GRANTING MOTION FOR REMAND

This matter is before the Court on a Motion for Remand (Filing No. 16) filed by Plaintiffs Jaden Thomas, Ryan Braverman, Katie Dedelow, Jake Ramsey, Isabella Blackford, Michael Duke, and Lindsay Freeman (collectively, "Plaintiffs"). Plaintiffs are freshman students at Indiana University ("IU") in Bloomington, Indiana. After discovering mold infestation in their dormitory rooms at IU, Plaintiffs initiated this lawsuit on behalf of themselves and other similarly situated IU students against Defendant the Trustees of Indiana University ("Defendant" or "Trustees") to obtain declaratory and injunctive relief and to recover damages arising from the mold issue.

On October 17, 2018, Plaintiffs filed their Complaint in Monroe Circuit Court, asserting claims for breach of contract, breach of implied warranty of habitability, and declaratory judgment on behalf of themselves and other similarly situated IU students (Filing No. 1-1 at 7–19). On October 26, 2018, nine days after Plaintiffs initiated this lawsuit, Defendant filed its Notice of Removal, thereby removing the lawsuit from Monroe Circuit Court to this Court (Filing No. 1). The Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) ("CAFA"), served as the basis of

Defendant's removal. On November 5, 2018, ten days after Defendant removed the case to this Court, Plaintiffs filed their Motion for Remand (Filing No. 16), asserting that the interests of justice warrant remand of the case back to Monroe Circuit Court. For the following reasons, the Court **GRANTS** the Motion for Remand.

## I. LEGAL STANDARD

CAFA allows for removal to federal court and provides jurisdiction over class actions involving minimally diverse parties and an amount in controversy exceeding $5,000,000.00. 28 U.S.C. § 1332(d)(2). However, CAFA contains exceptions to its normal jurisdictional rule. One such exception is found in CAFA "subsection, § 1332(d)(3), [which] describes situations in which the district court is permitted to 'decline to exercise jurisdiction' 'in the interests of justice and looking at the totality of the circumstances.'" *Hart v. FedEx Ground Package Sys.*, 457 F.3d 675, 680 (7th Cir. 2006). Additionally, "Subsection (d)(4), which follows immediately, stands out for its contrasting wording. It commands the district courts to decline jurisdiction under paragraph 2 when either the 'local' or the 'home state' factors are present." *Id.* CAFA's "exceptions are designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state." *Id.* at 682.

After a defendant establishes that CAFA jurisdiction exists, the burden falls on the plaintiffs who are seeking remand to show that one of the CAFA exceptions applies. *In re Sprint Nextel Corp.*, 593 F.3d 669, 673 (7th Cir. 2010); *see also Hart*, 457 F.3d at 680. The "interests of justice" exception involves the following consideration.

> A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction [if] greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate

and the primary defendants are citizens of the State in which the action was originally filed based on consideration of—

> (A) whether the claims asserted involve matters of national or interstate interest;
> (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;
> (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;
> (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;
> (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and
> (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

28 U.S.C. § 1332(d)(3).

"The plaintiff need not satisfy all factors, rather a balancing test should be applied taking into consideration the 'totality of the circumstances.'" *Henry v. Warner Music Grp. Corp.*, 2014 U.S. Dist. LEXIS 39309, at *20 (S.D.N.Y. Mar. 24, 2014). "No single factor is dispositive; not all need to favor remand for the court to decline jurisdiction." *Speed v. JMA Energy Co., LLC*, 872 F.3d 1122, 1128 (10th Cir. 2017).

## II. <u>DISCUSSION</u>

"Plaintiffs do not contest that (1) minimal diversity exists; and (2) the aggregate amount in controversy exceeds five million dollars." ([Filing No. 17 at 4](#).) The Defendant's initial burden of establishing that CAFA jurisdiction exists has been satisfied. However, Plaintiffs argue, the "interests of justice" exception to CAFA jurisdiction warrants remand of the case back to state court. Thus, the Court will consider each of the factors applicable to the "interests of justice" exception.

A.  **Citizenship of the Defendant and Citizenship of Between One-third and Two-thirds of the Proposed Class**

A district court may decline to exercise CAFA jurisdiction if greater than one-third but less than two-thirds of the proposed class and the defendant are citizens of the state in which the action was originally filed. 28 U.S.C. § 1332(d)(3). This action was originally filed in Indiana state court. The sole defendant, the Trustees of Indiana University, is an Indiana political subdivision, and thus, is a citizen of Indiana. *See* Indiana Code § 21-20-2-2; *Moor v. County of Alameda*, 411 U.S. 693, 718 (1973) ("for purposes of diversity of citizenship, political subdivisions are citizens of their respective States.").

The Plaintiffs' proposed class involves "[a]ll individuals who resided at IU residential dormitories for the Fall, 2018 Semester and were exposed to and suffered injury due to mold that was present in the IU residential dormitory where that individual resided. Excluded from the Class are Defendant(s) and their officers, directors and employees." ([Filing No. 1-1 at 11](Filing No. 1-1 at 11).)

The Defendant argues that this proposed class is a "fail-safe class,"[1] and thus, it is impossible to readily ascertain who is actually a class member and what percentage of putative class members are citizens of Indiana. The Defendant asserts that, because the actual class members and their citizenship cannot be readily ascertained, any determination of citizenship and percentage of citizenship would be impermissible guesswork. *See In re Sprint Nextel Corp.*, 593 F.3d at 674 (guesswork about citizenship of class members is insufficient). Moreover, citizenship should not be determined by looking at all residents of IU's dorms or the entire IU student population, but rather, citizenship should be determined by looking at the proposed class. Because

---

[1] A fail-safe class is "defined so that whether a person qualifies as a member depends on whether the person has a valid claim. Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012).

4

the proposed class does not allow for determination of the members' citizenship, this factor cannot be satisfied for remand. Additionally, the Defendant argues that citizenship must be determined as of the time of removal, not by later developments in the lawsuit.

The Magistrate Judge previously addressed these issues raised by the Defendant.

> The court further notes that the "fail-safe" nature of the class definition in the plaintiffs' complaint (*see* complaint, ¶ 28) does not at this time permit an objective, non-merits based ascertainment of class members, but that the proposed class can be appropriately defined for purposes of applying the jurisdictional considerations of Section 1332(d)(3) as "All individuals who resided at IU residential dormitories for the Fall, 2018 Semester." In other class contexts, the Seventh Circuit has directed district courts to avoid fail-safe class definitions and solve that problem by redefining the class to avoid the fail-safe aspects. *See Messner v. Northshore University HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) (problem with fail-safe class "can be and often should be solved by refining the class definition rather than by flatly denying class certification on that basis"); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015) (classes defined in terms of merits success—"so called 'fail-safe classes'—are not properly defined").

([Filing No. 27 at 2](#)–3.)

Following this Order, the Defendant filed a stipulation regarding citizenship, wherein it stipulated:

> 1. The percentage of Indiana citizens residing in the Foster and McNutt Dormitories for the Fall Semester, 2018, falls between 33% and approximately 47%, excluding employees of Indiana University; and
>
> 2. For purposes of the Court's analysis of 28 U.S.C. § 1332(d)(3), and without waiving its position that Plaintiffs have proposed a fail-safe class, Indiana University will not object to the Court's use of those percentages as representative of "[a]ll individuals who resided at IU residential dormitories for the Fall, 2018 Semester," Dkt. 1–1, Doc. B, at ¶ 28.

([Filing No. 28 at 1](#)–2.)

By the Defendant's own stipulation, the citizenship of students residing in Foster and McNutt dormitories consisted of 33–47% Indiana citizens, and those figures could be used for all individuals who resided at IU residential dormitories for the Fall 2018 semester. In its prior Order,

the Court informed the parties that it could define the class for purposes of applying the jurisdictional considerations of § 1332(d)(3) as "all individuals who resided at IU residential dormitories for the Fall 2018 Semester." (Filing No. 27 at 2.) Having this fair notice from the Court, the Defendant still stipulated to a citizenship percentage of 33–47% Indiana citizens.

However, the Defendant's Notice of Removal is even more important to the Court's analysis than the Defendant's stipulation. As the Defendant asserted, citizenship is determined as of the time of removal, not by later developments in the lawsuit. *See Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 807 (7th Cir. 2010) (however, acknowledging "[t]here are, it is true, exceptions to the principle that once jurisdiction, always jurisdiction").

In order to establish CAFA jurisdiction in the first place, the Defendant alleged in its Notice of Removal,

> The demographics of the putative class as a whole further indicates that the majority of putative class members are likewise citizens of states other than Indiana. According to registration records for students listed as residents in the two dorms identified in the Complaint, 53% of students living in those dorms have home addresses outside of Indiana.

(Filing No. 1 at 6, ¶ 19). This allegation, asserted to invoke the Court's jurisdiction, is contrary to and undermines the Defendant's more recent argument that the Court should not look to all the residents of the two dorms when determining citizenship and jurisdiction. As already noted, the Defendant argues that the Court must consider citizenship at the time of removal and later developments in the case cannot affect citizenship at the time of removal. Under this argument, the Court considers the jurisdictional and citizenship allegations of the Defendant's Notice of Removal, wherein the Defendant alleged that all residents of the two dorms were indicative of the proposed class as a whole.

The Defendant cannot have it both ways—asserting that the citizenship of the two dorms' residents is representative of the proposed class as a whole in order to invoke the Court's jurisdiction in the first place, and then later asserting that the Court cannot determine citizenship of the proposed class based upon the citizenship of all the residents of the two dorms.

To remove this case to federal court and establish jurisdiction, the Defendant alleged the citizenship of the proposed class members based upon the citizenship of the students residing in the two dorms, asserting 53% of the students were from outside Indiana. Later, the Defendant stipulated that between 33% and approximately 47% of the two dorms' residents were Indiana citizens, and these percentages were representative of all individuals who resided at IU's dormitories for the Fall 2018 semester. The Court concludes that this is sufficient evidence to determine for CAFA jurisdictional purposes that greater than one-third but less than two-thirds of the proposed class members are citizens of the state in which the action was originally filed. Thus, the threshold requirement for the "interests of justice" exception is met.

**B.**     **National or Interstate Interest**

The first factor to consider under the "interests of justice" exception to exercising CAFA jurisdiction is "whether the claims asserted involve matters of national or interstate interest." 28 U.S.C. § 1332(d)(3)(A). The Defendant asserts this case involves national and interstate interests because IU is a university that has a nationwide and international reach with students from all over the country and the world. It is a nationally recognized university, and an adverse ruling in this case could affect its standing and recruiting ability across the country. The Defendant also points out that it is subject to a number of federal statutes because it receives federal funding. In addition, the standard of care for remediating IU's dormitories will be measured by national standards, not

local or statewide standards. Thus, the Defendant asserts, this case involves national and interstate interests favoring keeping the case in federal court.

The Plaintiffs assert that when "[e]verything connects to" the forum state, this first factor's consideration is "not a close one," citing *Speed*, 872 F.3d at 1129. They argue that everything in this case connects to Indiana. The dormitories at the center of this litigation are in Indiana. The putative class members are students at IU, living in IU's dorms in Indiana. Each of the putative class members is in privity with IU. They have interests in the IU dormitories. Many of the class representatives permanently reside in Indiana. The Defendant is an Indiana state entity. All conduct giving rise to this lawsuit occurred solely in Indiana, and the legal claims alleged arise from Indiana law. The Plaintiffs also note the fact that some of the putative class members are from other states or countries does not turn the case into a matter of national or interstate concern. The parties' citizenship is already accounted for in the threshold issue of one-third to two-thirds of the putative class members' citizenship.

The Court agrees with the Plaintiffs'. The claims asserted involve mold remediation in IU's dormitories located exclusively in Indiana. The claims involve a breach of contract under lease agreements for living in IU's dormitories in Indiana. While many students at IU come from states across the country and countries around the world, that does not transform the claims asserted into national or interstate (or international) matters. Rather, the claims involve local concerns over the habitability of college dorm rooms for students who chose to move to and study at IU in Indiana. The Court determines that this first factor favors remanding the case to state court.

C. **Governing State Law**

Next, the Court considers "whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States." 28 U.S.C. §

1332(d)(3)(B). The Defendant asserts, "Indiana University acknowledges that Indiana substantive law governs the putative class's claims. However, this Court is more than capable of applying Indiana's substantive law." (Filing No. 44 at 16.)

The Plaintiffs claims—breach of contract, breach of implied warranty of habitability, and declaratory judgment—are governed by Indiana statutory and common law. No other states' laws will apply in this case. The Plaintiffs assert that the "second factor focuses on whether the forum State court will be applying its own laws or the law of other states (and not whether the federal court is able to apply forum state law)," (Filing No. 46 at 15); thus, the Defendant's argument is irrelevant.

The Court again agrees with the Plaintiffs. This factor does not ask whether the federal court is capable of applying state law. Rather, the factor considers whether the claims asserted will be governed by the forum state's laws or by the laws of other states. The laws of Indiana govern the claims in this matter, as acknowledged by the Defendant, and thus, this factor also weighs in favor of remand.

**D.     Pleading the Action to Avoid Federal Jurisdiction**

The next factor to consider is "whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction." 28 U.S.C. § 1332(d)(3)(C). The Defendant argues that "the fact that [the Plaintiffs] have plainly alleged that the requirements of CAFA jurisdiction are met weighs in favor of this Court retaining jurisdiction." (Filing No. 44 at 16.)

The Plaintiffs point to the Tenth Circuit case of *Speed* when discussing this factor. "This factor favors retention in federal court when the plaintiff has deliberately defined the prospective class or the relief sought in order to frustrate removal under CAFA." *Speed*, 872 F.3d at 1133. *See also Preston v. Tenet Healthsystems Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 822–23 (5th Cir.

2007) ("record does not indicate that the plaintiffs intentionally pleaded the case in a manner to avoid federal jurisdiction"). The Plaintiffs' proposed class is defined naturally to encompass all students living in IU dorms who have been affected by the mold issues. The class definition has not been limited in a way to avoid federal jurisdiction.

This factor asks whether the Plaintiffs pled their class claims in a way to avoid federal CAFA jurisdiction, not whether the pleadings satisfy the jurisdictional requirements for CAFA. The Defendant's position conflates this factor with the Defendant's initial burden of establishing that CAFA jurisdiction exists. Nothing in the record suggests that the Plaintiffs pled their class action in a manner seeking to avoid federal jurisdiction, and the Defendant has not argued such. Thus, this factor weighs in favor of remand.

E. **Nexus Among the Forum, Class Members, Harm, and Defendant**

Under the fourth factor, the Court considers "whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants." 28 U.S.C. § 1332(d)(3)(D). The Defendant acknowledges "there is arguably a 'distinct nexus' between the parties and the forum state of Indiana." ([Filing No. 44 at 12](#).) The Defendant provides no other argument or analysis about this factor.

The named Plaintiffs and the putative class members are students of IU and currently live in Indiana, specifically in Monroe County where the case was originally filed. The Defendant is an Indiana political subdivision located in Monroe County. The mold infestation at the heart of this case is located in Monroe County. The harms giving rise to this lawsuit occurred in Monroe County. Thus, the Court concludes that there is a strong and distinct nexus among the forum where the case was originally filed, the class members, the alleged harm, and the Defendant. Remand is warranted under this factor.

## F. Concentration of State Citizenship

Next, the Court considers,

> whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States.

28 U.S.C. § 1332(d)(3)(E).

The Defendant argues that remand is inappropriate when citizens of a state other than the forum state comprise at least 5% of the putative class. For this argument, the Defendant relies on Senate Report No. 109-14, which explained,

> If all of the other class members (that is, the class members who do not reside in the state where the action was filed) are widely dispersed among many other states (e.g., no other state accounted for more than five percent of the class members), that point would suggest that the interests of the forum state in litigating the controversy are preeminent (versus the interests of any other state). The Committee intends that such a conclusion would favor allowing the state court in which the action was originally filed to handle the litigation. However, if a court finds that the citizenship of the other class members is not widely dispersed, the opposite balance would be indicated. A federal forum would be favored in such a case because several states other than the forum state would have a strong interest in the controversy.

S. REP. 109-14, 37–38, 2005 U.S.C.C.A.N. 3, 36.

The Defendant points the Court to *McCann v. W. Chester Hosp., LLC*, where an Ohio district court declined to remand a case. There, the court determined that 63% of the putative class were citizens of the forum state, Ohio, but "the fact that a substantial minority of potential plaintiffs in this case comes from states other than Ohio (primarily but not exclusively Kentucky) also guides this Court to accept jurisdiction." *McCann v. W. Chester Hosp., LLC*, 233 F. Supp. 3d 607, 613 (S.D. Ohio 2017).

The Defendant asserts that the demographics of the residents of Foster and McNutt Dormitories show several states besides Indiana have significant representation in the putative

class. Of the students living in these dormitories, 47% are Indiana citizens, 15.83% are Illinois citizens, 5.44% are New Jersey citizens, 4.50% are California citizens, 3.44% are New York citizens, 2.91% are Ohio citizens, and 4.30% are international citizens. Therefore, of the students living in these dormitories, 83.42% are citizens of Indiana, five other states, and other countries. The Defendant argues that these statistics show that the putative class members are not widely dispersed among several states for purposes of this factor, so the Court should retain jurisdiction.

The Plaintiffs assert that other courts have rejected the "five percent" argument advanced by the Defendant.

> The 5% figure in the Senate Report is solely an *example* of when plaintiffs are widely dispersed among different States, not a mandatory threshold for evaluating dispersion. . . . [C]ourts look in particular at whether any other state has an interest in the litigation on par with the forum state.

*Speed*, 872 F.3d at 1136–37 (affirming remand where citizens of forum state Oklahoma made up 48.46% of putative class, citizens of non-forum state Texas made up 20.95% of class, and citizens of non-forum state California made up 5.68% of the putative class). *See also Foley v. Cordillera Golf Club, Ltd. Liab. Co.*, 2012 U.S. Dist. LEXIS 48108 (D. Colo. Apr. 5, 2012) (remand appropriate where citizens of non-forum state Texas made up 18.5% of class and citizens of non-forum state Florida made up 15.1% of the putative class).

The Court first notes that the five percent figure included in the Senate Report cited by the Defendant was not included in the codified statute, and thus, it is not a binding, statutory requirement for the Court to consider under this factor. If Congress intended the five percent figure to be a hard and fast rule to be applied by the federal courts, then it would have included that calculation within the statute.

According to the Defendant's figures, 47% of the putative class members are Indiana citizens. Illinois citizens make up the next greatest concentration of putative class members at

15.83%. Illinois is followed by New Jersey, making up 5.44% of the class. California citizens are 4.50% of the class. New York citizens are 3.44% of the class. Ohio citizens are 2.91% of the class. International citizens are 4.30% of the class. Another 16.58% of the class is comprised of citizens from various, unidentified states. These unidentified citizens likely come from at least six different states based on the figure that Ohio citizens comprise 2.91% of the class. Considering these figures provided by the Defendant, the Court concludes that no other state has an interest in the litigation on par with the forum state.

The number of citizens of Indiana in the proposed class is substantially larger than the number of citizens from Illinois, New Jersey, or any of the other states. Additionally, the citizenship of the non-forum members of the proposed class is dispersed among a substantial number of states. Therefore, this factor weighs in favor of remand.

### G. Other Similar Class Actions

Finally, the Court considers "whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed." 28 U.S.C. § 1332(d)(3)(F).

> [T]he purpose of this factor is efficiency and fairness: to determine whether a matter should be subject to federal jurisdiction so that it can be coordinated with other overlapping or parallel class actions. If other class actions involving the same subject matter had been filed elsewhere, this would strongly favor federal jurisdiction, because the combined litigation could be handled under the federal court's multidistrict-litigation process.

*Speed*, 872 F.3d at 1137 (internal citation and quotation marks omitted). Both parties assert that no other similar class actions have been filed during the previous three-year period. Thus, this factor favors remand.

### III. CONCLUSION

With all statutory factors favoring remand, the Court concludes that the "interests of justice" exception to CAFA jurisdiction applies, and thus, the Court declines to exercise CAFA jurisdiction over this case. The Plaintiffs' Motion for Remand (Filing No. 16) is **GRANTED**. The Clerk is **directed to remand** this matter to the Monroe Circuit Court, Cause No. 53C01-1810-PL-002169, and to **close** this federal action.

**SO ORDERED.**

Date: 12/13/2018

*[signature]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jacob R. Cox
COX LAW OFFICE
jcox@coxlaw.com

Jonathon Noyes
WILSON KEHOE & WININGHAM
JNoyes@wkw.com

William E. Winingham
WILSON KEHOE & WININGHAM
winingham@wkw.com

Scott R. Alexander
TAFT STETTINIUS & HOLLISTER LLP
salexander@taftlaw.com

Thomas A. Barnard
TAFT STETTINIUS & HOLLISTER LLP
tbarnard@taftlaw.com

Frank J. Deveau
TAFT STETTINIUS & HOLLISTER LLP
fdeveau@taftlaw.com

Melissa A. Macchia
TAFT STETTINIUS & HOLLISTER LLP
mmacchia@taftlaw.com

Ann O. McCready
TAFT STETTINIUS & HOLLISTER LLP
amccready@taftlaw.com

Monroe Court Clerk
301 N. College Ave Ste 201
Bloomington, IN 47404